Maklt, J.
The bill is filed for the construction of the will *220 of Henry 8. Lloyd, in certain particulars. Upon a consideration of tbe will, in connection with tbe first and principal point upon which the advice of the Court is asked, it seems to ns clear that the testator expected and intended all the plantations worked by him to be continued in cultivation two years, for tbe payment of his debts, and so far as tbis is practicable and consistent with the rights of others, it ought to be carried into execution. With respect to the Roanoke plantation, It appears from the will of Henry Slade, to be devised to the testator, Lloyd, with a limitation over in the case of his death without issue, to Helen B. Slade and Ohloe Hinton. The death of Lloyd, without issue, as stated in the pleadings, vests the rights of property and possession immediately in the de-visees in remainder, and with this result we cannot interfere, so far as Mrs. Hinton is concerned. But inasmuch as Miss Slade receives a large estate, real and personal under the will, she Is bound to carry out, even to the prejudice of benights, the manifest purpose of the testator in respect to his Roanoke plantation. This is upon a principle of equity that a legatee who elects to take under the will, must do so subject to all the provisions of the instrument that affects his interest. lie cannot accept the good and repudiate the bad. The Court Is of opinion, therefore, that the profits of the Roanoke plantation, with the others, should be appropriated for two years, if necersary, to pay tbe debts of the estate, subject to the right of Mrs. Hinton to a proper rent for her interest in the same. It will follow that the slaves given to Miss Slade, must also be taken by her, subject to the incumbrance of Working to pay debts for two years, if necessary. The bequest to Helen B. Slade is in the following words: “ and I also give tad bequeath to my said aunt Helen, all my negroes on my Roanoke plantation, also, all my negroes on my Edgecombe farms, which I got from Martin county, whether I inherited or purchased them.” The bequest embraces, as we think, all the slaves that were at the time worked upon the Roanoke farm, without regard to the source from which they were derived. It, consequently, includes Weaver, who was purchased in Rich- *221 iuoikI, and pnl, to labor on the Roanoke farm. The child, Sally, is also included, for although being at the time among the slaves of his aunt, at her residence, the child was born on the Roanoke plantation of a mother belonging to that estate, and was removed for a special reason and purpose only. It was not permanently settled or fixed at the plantation of the aunt, and, consequently, had not lost the domicil of its birth. It is to he regarded, therefore, as one of the negroes on the Roanoke plantation.
Considering the other clause of this bequest, we are of the opinion that all the slaves on the Edgecombe farms which had been removed, to them from Martin, no matter how or from what quarter derived, pass under the bequest; also, the slaves on the Edgecombe farms whi ch had been bought in Martin. This will include Anderson and Thrower.
The children, Granville, Betsy, Francis and London, appear to be offspring of slaves removed from Martin to Edgecombe, but born in the latter county. While the testator is máking provision to restore the slaves to their original places of residence, and to their family connexions, it would be an inconsistent and harsh construction to hold that he intended to se-. parate infant shildreu from their mothers. We think it was intended the children should go with their mothers, and, consequently, they are embraced in the bequest to Miss Slade.
Per Curiam, Decree accordingly.